# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RICHARD BERNARD ALLEN PREWITT,

     *Plaintiff*,

*v.*                  CASE NO. 13-cv-12336

COMMISSIONER OF          DISTRICT JUDGE MARK A. GOLDSMITH
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 11) be **GRANTED**, that Defendant's Motion for Summary Judgment (doc. 14) be **DENIED**, and the decision of the Commissioner be **REVERSED**, and the case **REMANDED** for further administrative proceedings.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1]The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits (DIB) and Supplemental Security Income (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 11, 14.)

Plaintiff filed an application for a period of disability and DIB and SSI on June 7, 2011, alleging that he became unable to work on December 31, 2005. (Transcript, Doc. 9 at 179-193.) The claim was denied at the initial administrative stages. (Tr. 129-32, 133-36.) On April 18, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Jeanne M. VanderHeide, who considered the application for benefits *de novo*. (Tr. 29, 33.) In a decision dated May 16, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 1, 2011, the amended onset date, through the date of the ALJ's decision. (Tr. 23, 33-34.) Plaintiff requested Appeals Council review of this decision. (Tr. 7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 15, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) On May 28, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

**B.      Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc.*

---

[2]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

*Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a

party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C.    Governing Law

Disability for purposes of DIB and SSI is defined as the:

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (DIB), 416.905(a) (SSI).

Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through June 1, 2015, and had not engaged in substantial gainful activity since June 1, 2011. (Tr. 14.) At step two, the ALJ found that Plaintiff's congestive heart failure, cardiomegaly, depression, anxiety disorder, and right shoulder rotator cuff tear and moderate degenerative changes were "severe" within the meaning of the second sequential step. (Tr. 14.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 14-16.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform sedentary[3] work

---

[3]

     Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying

but he may never climb ladders, ropes or scaffolds, may only occasionally climb ramps or stairs, may perform occasional overhead reaching or overhead handling with the non-dominant right upper extremity, may perform occasional handling, fingering (fine manipulation of items no smaller than the size of a paper clip) and feeling with the dominant left upper extremity, and must avoid all unprotected heights. (Tr. 16.) The RFC further limited Plaintiff to work that is simple, routine and repetitive tasks and performed in a low stress job, "defined as having only occasional decision making required and only occasional changes in the work setting and with no production rate or pace work." (*Id.*) Finally, Plaintiff requires work that involves only occasional interaction with the public and only occasional interaction with coworkers. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his past relevant work as a butcher or laborer. (Tr. 22.) At step five the ALJ found that there were jobs existing in significant numbers in the economy that Plaintiff could perform and therefore Plaintiff was not disabled. (Tr. 23-24.)

### E.    Administrative Record

Plaintiff was 46 years old at the time of the hearing. (Tr. 35.) Plaintiff lives alone in an apartment. (Tr. 36.) Plaintiff has a high school education and last worked as a butcher and a laborer. (Tr. 36, 274.)

Plaintiff testified that he can no longer work due to carpal tunnel syndrome in his left hand and arthritis in his right shoulder, a callous on his foot and heart problems. (Tr. 39-40.) He testified that he suffers from shortness of breath occurring in stressful situations. (Tr. 40.) He described pain when he lifts his shoulder and he takes Aleve for pain approximately twice a week. (Tr. 41.)

---

articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

His testified that the shoulder problems started at least six months prior to the hearing. (Tr. 44.) About three months prior to the hearing he started wearing an Ace Wrap on his left hand for pain; he wears it approximately three times a week. (Tr. 42-43.) He also takes Abilify and Prestique. (Tr. 47.) Plaintiff testified that his medications cause "grogginess" and "sleepiness." (Tr. 45.)

Plaintiff testified that he attends group therapy, Narcotics Anonymous ("NA") and Alcoholics Anonymous ("AA") meetings. (Tr. 47.) He testified that he has attended the meetings for approximately the last four years and has been clean for four years. (*Id.*) Plaintiff plays chess with his brother and friends in recovery, at both his home and theirs. (Tr. 48.) He also likes to shoot basketball, but has not done so in two years because he has been busy with meetings. (Tr. 51.) He dresses, showers and shaves, but has some pain in his hand or wrist with shaving and tying his shoes and has trouble reaching his back when showering. (Tr. 49-50.) Plaintiff testified that he has difficulty sleeping at night and sleeps during the day. (Tr. 49.) Plaintiff lost his driver's license so he takes the bus and walks to appointments and meetings. (Tr. 50.) He does not like crowds, but testified that he deals with them because he has to take the bus. (Tr. 51.) He is able to take care of his apartment by himself, including shopping, cleaning, cooking, doing laundry and taking out the garbage. (Tr. 51.)

Plaintiff testified that he has no problem sitting and he can stand until his foot starts hurting, but if he shaves the callous on his foot, then he can stand, he can walk about two blocks and he can lift twenty pounds at most. (Tr. 53-54.) Upon further questioning he testified that to lift a gallon of milk with his left hand, he must also use his right hand for assistance. (Tr. 55.) He testified that he can write with his left hand, but it goes numb if he writes too long. (Tr. 56.) He described anxiety attacks once a week where his mind goes blank. (Tr. 57.)

Plaintiff amended his alleged onset date to June 1, 2011, which post-dates a prior January 21, 2010 ALJ decision, and coincides with his last wages and a hospital visit. (Tr. 14, 115-28.) While the record contains some evidence prior to the amended alleged onset date, the discussion herein will focus on evidence from the time period at issue and any evidence prior to the alleged onset date that is relevant to Plaintiff's condition during the period at issue.

On June 1, 2011, Plaintiff reported to the hospital with complaints of chest pain and shortness of breath. (Tr. 372-84 ) He had not been taking his medications because he lost his insurance. (Tr. 373.) His past medical history included diagnoses of cardiomyopathy secondary to alcohol with alcoholic liver cirrhosis. (Tr. 373.) At the hospital, Plaintiff reported that he had stopped drinking alcohol approximately three months prior. (*Id.*) At that time, Plaintiff was diagnosed with acute congestive heart failure secondary to known alcoholic cardiomyopathy, hypertension and liver cirrhosis. (Tr. 375-76.)

On September 7, 2011, Plaintiff underwent a consultative medical examination with Bina Shaw, M.D., who diagnosed hypertension, dilated cardiomyopathy and congestive heart failure class II, stable. (Tr. 385-91) As the subject of one of Plaintiffs arguments, Dr. Shaw's opinion will be discussed in further detail in the analysis below.

In February 2012 Plaintiff attended a three-month follow-up visit at Dearborn Cardiology Associates. (Tr. 406.) Plaintiff complained of "some chest pain and shortness of breath with exertion." (*Id.*) His medication history included Coreg, Lasix, Lisinopril and baby aspirin. (*Id.*) Lisinopril was increased and potassium was added. (*Id.*)

On February 9, 2012, Plaintiff sought treatment through CHASS, Community Health and Social Services Center. (Tr. 427.) He complained that his "right shoulder, left wrist and right foot are all hurting." (*Id.*) He was assessed with pain in his joints, multiple sites, unspecified essential

hypertension, congestive heart failure and carpal tunnel syndrome. (*Id.*) The record was completed by a nurse practitioner and x-rays and EMG of the left wrist were pending. 427.) At a later visit, on February 23, 2012 Plaintiff's medical history noted congestive heart failure, hypertension, joint pain and a foot callous. (Tr. 430.)

Plaintiff sought mental health treatment in February 2012 and underwent an initial psychiatric evaluation with Swarn Mahajan, M.D., on March 12, 2012 (Tr. 413-24, 425-26.) Dr. Mahajan diagnosed major depressive disorder, recurrent, moderate, polysubstance dependence and nicotine dependence. (Tr. 426.) The record shows treatment through April 11, 2012 and Plaintiff was prescribed Abilify and Pristique. (Tr. 421.)

March 2012 x-rays of the right shoulder revealed prominent rotator cuff changes on the greater tuberosity and moderate degenerative change within the right acromioclavicular joint. (Tr. 435.) Plaintiff was diagnosed with right acromioclavicular joint osteoarthrosis and right rotator cuff syndrome. (Tr. 439-40.) He was referred to physical therapy and prescribed ibuprofen 600 mg as needed for pain. (*Id.*)

Mary McCormick, a board certified family nurse practitioner, completed a physical medical source statement dated April 23, 2012. (Tr. 444-48.) She reported that Plaintiff can walk for one city block, sit for 30 minutes, stand for 20 minutes and sit and stand/walk for less than two hours in an eight-hour workday. (Tr. 445.) While the source statement was reviewed with the record in full, further details will not be set forth herein. The nurse practitioner's medical source statement was not at issue in Plaintiff's motion and the ALJ's decision shows that she properly considered it and explained the weight given to it. (Tr. 19-20.)

At the hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual of the Plaintiff's age, education and past work experience who is limited to sedentary work and further:

> [L]imited to no climbing of ladders, ropes or scaffolds, occasional climbing of ramps or stairs. Such an individual should avoid all exposure to unprotected heights. (Tr. 61.)

The VE testified that such an individual could not perform Plaintiff's past work but provided other jobs such an individual could perform. (*Id*.) The VE testified that such an individual could perform the following unskilled sedentary work: Bench assembler, representative *Dictionary of Occupational Titles* ("DOT") code 713.687-018, with 3,250 positions in the region defined as the Southeastern Michigan regional labor market and greater than 200,000 in the national economy; hand packager, representative DOT code 976.684-018, with 3,250 positions in the regional and greater than 200,000 in the national economy; and security monitor, representative DOT code 379.367-010, with 1,500 positions in the region and greater than 120,000 in the national economy. (*Id.*)

The ALJ then asked the VE to consider the same individual as the prior hypothetical with the additional limitation "to simple, routine, repetitive tasks preformed (sic) at a low stress job defined as having only occasional decision making, require only occasional changes in the work setting, where there's no production rate or pace work, . . . ." (Tr. 62.) The VE testified that these further limitations would not change his prior response. (*Id.*) The ALJ then added a limitation to "only occasional interaction with the public or co-workers." (*Id.*) Again, the VE testified that his prior response would not change. (*Id.*)

The ALJ added the following additional limitation: "[I]n a left-handed dominant individual, no overhead handling, no overhead reaching or handling with the right non-dominant hand." (Tr.

62.) Again, the VE testified that he would have the same response. (*Id.*) The ALJ added the following cumulative limitation: "[T]he left dominant hand to occasionally fingering, that is, fine manipulation of items no smaller than the size of (sic) paper clip and occasional feeling." (*Id.*) The VE testified that such a person would not be able to perform the position as final assembly bench assembler but instead, there would be jobs as a visual inspector, with a representative DOT code 712.687-018 with 1,500 jobs locally and greater than 120,000 jobs nationally. (*Id.*)

Finally, the ALJ added a limitation to "occasional fingering, occasional feeling" with the left dominant hand. (Tr. 63.) The VE testified that there would be no change from his prior response. (*Id.*) The ALJ asked if these jobs would be available for an individual who were "off task 20 percent or more of each work day." The VE testified that there would be no competitive full time employment available. (*Id.*) Plaintiff's counsel had no follow-up questions. (*Id.*)

### F. Analysis

Plaintiff contends that the ALJ erred in her questioning of the VE and that the VE's testimony is not consistent with the DOT and its companion volume, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"). Plaintiff also argues that the ALJ's RFC does not adequately account for the ALJ's findings regarding Plaintiff's mental residual functional capacity and that the RFC is not supported by substantial evidence where the consultative medical examiner opined that Plaintiff was limited to lifting no more than 5 pounds. (Doc. 11.) Plaintiff concludes that the RFC is not accurate and is not supported by substantial evidence.

### 1. Whether the ALJ Erred in Questioning the VE

Plaintiff argues that the ALJ erred in failing to ask the VE whether there were inconsistencies between his testimony and the information set forth in the DOT. Social Security

Ruling (SSR) 00-4p provides that "the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." SSR 00-4p. The ALJ will "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and [i]f the VE's . . . evidence appears in conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." SSR 00-4p.

Prior to the VE providing testimony, the ALJ asked the VE whether he knew "that [his] testimony must be consistent with the DOT." (Tr. 59.) The VE responded, "Yes." (Tr. 59.)  The ALJ's pre-testimony inquiry alone is not fatal to her decision. Social Security Ruling 00-4p does not require an incantation of specific language in the inquiry to the VE. In *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601 (6th Cir. 2009), the Court stated that the plaintiff had not "identified any authority requiring ALJs to conduct a mechanical recitation of the precise language in S.S.R. 00-4p for the purpose of determining whether there are any inconsistencies." *Lindsley*, 560 F.3d at 606 (ALJ asked about "discrepancies" rather than "inconsistencies").

The ALJ's inquiry prior to the VE's testimony and the VE's affirmative response under oath may, in some circumstances, fulfill the requirements of SSR 00-4p. However, here Plaintiff shows that a discrepancy exists between the VE's testimony and job descriptions available in the SCO. As Plaintiff points out, visual inspector (specifically, "gauger") with DOT code 712.687-018 identifies the physical demands for reaching, handling and fingering as "frequent" and hand packager (specifically, "Mounter, Hand (photofinishing)") with DOT code 976.684-018 identifies the physical demands for reaching and handling as frequent. *See* SCO, Part A 06.03, 06.04; (Doc. 11-2). These physical demands are inconsistent with the limitations set forth in the ALJ's hypothetical question and the RFC.

12

Defendant relies on *Lindsley* to argue that Plaintiff's representative waived his challenge to the VE's testimony when he declined to question the VE at the hearing. I also note that "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Martin v. Comm'r of Soc. Sec.*, 179 F. App'x 369, 374 (6th Cir. 2006); *see also Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008)("Nothing in the applicable Social Security regulations requires an administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy.") Yet, I suggest that the instant case is distinguishable due to the lack of a clear statement from the VE indicating that there are no inconsistencies between his testimony and the DOT. That, coupled with the inconsistency between the reaching and handling demands as set forth in the SCO with respect to two of the jobs to which the VE testified, and the restrictions as set forth by the ALJ in the hypothetical question and the RFC, does not, I conclude, meet the requirements of SSR 00-4p.

Plaintiff also challenges the VE's testimony regarding the third position cited by the ALJ, that of security monitor, DOT code 379.367-010. Plaintiff argues that the job code given at the hearing is for "Surveillance-System Monitor (government ser.)" and that pursuant to the DOT description, the job involves the monitoring of the premises of public transportation terminals. (Doc 11 at 12.) Plaintiff admits that the demands of this job as described in the SCO are "in line with the ALJ's RFC allowing occasional reaching, handling and fingering, . . . ." (Doc. 11 at 13.) Plaintiff goes on to argue that "it is, of course, common knowledge that this task is now performed by TSA" and that it is impossible to conclude from "reviewing TSA's website" that these jobs are "simple and routine" or "unskilled" as set forth in the ALJ's RFC. Plaintiff also argues that the job involves being present in public. I suggest that Plaintiff's claim is without merit. Plaintiff has not

13

shown an inconsistency with the DOT or the SCO. Further, these are issues on which Plaintiff could have questioned the VE at the hearing. I conclude that the ALJ may rely on this job as substantial evidence in support of her decision.

In light of the unresolved conflict between the VE's testimony and the DOT with respect to the physical demands of the occupations, I am unable to conclude that there is substantial evidence to support the ALJ's step five finding, and that the record requires further development as additional factual questions require resolution at the administrative level. A remand for further fact finding is required so that the Commissioner can, if necessary, conduct a new step five inquiry, provide DOT codes and apply SSR 00-4p. It may be that these jobs are still available to an individual with the RFC set forth by the ALJ, including the different limitations between the right and left upper extremities. However, the ALJ must elicit an explanation from the VE as to any discrepancies between the DOT and SCO and the VE's testimony, the basis for the VE's testimony regarding the same, and, in her decision, explain how she resolved this conflict.

The conflicts that Plaintiff identified regarding the use of the upper extremities also raises an issue as to the adequacy of evidence to support the ALJ's RFC limitation on Plaintiff's dominant left upper extremity. The Regulations provide that, in evaluating symptoms including pain, "statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), 416.929(a). The Regulations further provide that "[y]our symptoms, such as pain, . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §§ 404.1529(b), 419.929(b). Finally, in determining the RFC when there is

more than one impairment, the Regulations provide that the Commissioner will "consider all of your *medically determinable impairments* of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (emphasis added).

In her decision, the ALJ specifically addressed allegations of carpal tunnel syndrome and found that there was no diagnosis in the record and that it was not a medically determinable impairment. (Tr. 14.) As set forth above, a nurse practitioner listed carpal tunnel syndrome as an assessment in one examination report, but had no supporting objective findings, nor was a diagnosis made by an acceptable medical source. There is no evidence that an x-ray or EMG was taken of the left wrist. The ALJ did not find any medically determinable impairment, severe or non-severe, related to the left upper extremity. The ALJ noted that "[a]lthough there is scant objective evidence regarding a medically determinable impairment involving the left wrist, the undersigned has included manipulative limitations that take into consideration the claimant's complaints of left wrist pain." (Tr. 21.) There is also a question as to the length of time that Plaintiff had the wrist pain and whether or not it was a medically determinable impairment lasting or expected to last the requisite continuous period of not less than 12 months. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a). I suggest that nothing in the recommended remand of this case should be read to preclude a different determination of the RFC provided there is an application of the correct legal standard and substantial evidence in the record to support the decision. *See Lucas v. Astrue*, 2008 WL 474286 at *4 (D.Kan. Jan. 29, 2008)(citation omitted)("[W]here an issue is not precluded by the remand order or the judgment of the court in the prior judicial review, that issue may be decided differently . . . on remand if the Commissioner applies the correct legal standard and substantial evidence in the record as a whole supports the decision.")

2.      **Whether the RFC Adequately Accounted for Plaintiff's Mental Limitations**

Plaintiff argues that the ALJ's RFC does not adequately address the ALJ's finding that Plaintiff has moderate limitations in maintaining concentration, persistence or pace and social functioning. The ALJ followed the prescribed rules for evaluating Plaintiff's mental impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ properly measured the severity of Plaintiff's mental disorder in terms of four functional areas, known as the "B" criteria, by determining the degree of limitation in each area.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ determined that Plaintiff has no limitations in activities of daily living, moderate limitations in social functioning and in maintaining concentration, persistence and pace and that there have been no episodes of decompensation. (Tr. at 15.) In making these findings, the ALJ considered the medical opinions and other evidence of record, including Plaintiff's testimony and reports.[4]  (Tr. at 15-22.)

Plaintiff argues that the ALJ's "only attempt to address concentration, persistence or pace, is to refer to inability to perform 'production rate or pace work', terms the ALJ did not define and which appear nowhere in the agency's regulations, rulings or other authority." (Doc. 11 at 12.) In fact, these limitations were only a part of the non-exertional limitations contained in the RFC and hypothetical question. The ALJ asked the VE, in addition to the physical limitations, to consider the individual "further limited to simple, routine, repetitive tasks preformed (sic) at a low

---

[4]There is a medical opinion of record regarding Plaintiff's alleged mental impairments that was not mentioned in the ALJ's decision. It is was a part of the initial determination. Ruqiya Tareen, M.D., completed a Psychiatric Review Technique dated August 10, 2011 based on a review of the record at that time. (Tr. 77-78, 94-95.) Dr. Tareen opined that Plaintiff had only mild limitations in each of the "B" criteria, including activities of daily living, maintaining social functioning and difficulties in maintaining concentration, persistence and pace. (Tr. 77, 94.) Dr. Tareen concluded that Plaintiff's affective disorder and substance addiction disorders were non-severe. (Tr. 77, 94.) The ALJ's failure to address this opinion or otherwise indicate that it was considered is harmless error because the ALJ concluded that Plaintiff's mental impairments were more severe than Dr. Tareen opined.

16

stress job defined as having only occasional decision making, requir[ing] only occasional changes in the work setting, where there's no production rate or pace work." (Tr. 61.)

Defendant clearly distinguishes Plaintiff's reliance on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010). *Ealy* contained evidence from more than one source that claimant's ability to "sustain attention and concentration for simple repetitive tasks was moderately limited." *Ealy*, 594 F.3d at 509, 515 n.2. Furthermore, one of the medical opinions found that Ealy could sustain attention in two-hour segments to complete simple repetitive tasks "where speed was not critical." *Id.* at 516. The *Ealy* court pointed out that this description "speaks to some of the restrictions – in pace, speed and concentration" that one of the doctors and the ALJ had found Ealy to possess, yet were omitted from the ALJ's hypothetical question. *Id.* District Courts in this Circuit have declined expand *Ealy* beyond a fact-based analysis. *See e.g., Marini v. Comm'r of Soc. Sec.,* 2014 WL 1230034 *6 (E.D.Mich. 2014); *Tanzil v. Comm'r of Soc. Sec.,* 2013 WL 5423792 *2 (E.D.Mich. 2013); *Jackson v. Comm'r of Soc. Sec.,* 2011 WL 4943966 *4 (N.D.Ohio 2011); *Shaffer v. Colvin*, 2014 WL 1207534 *7 (E.D.Tenn. 2014); *see also Lewicki v. Comm'r of Soc. Sec.,* 2010 WL 3905375 *2 (E.D.Mich. 2010)("Decisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work.").

Similarly, other cases relied upon by Plaintiff, including *Edwards v. Barnhart*, 383 F.Supp.2d 920 (E.D. Mich. 2005), are distinguishable. In *Edwards* the ALJ's hypothetical question failed to mention quotas, production rates or pace work. Further, the *Edwards* court noted that the record included a doctor's opinion that Plaintiff had a moderate limitation in concentration, persistence and pace, and did not, as in another case, include testimony of physicians who "characterized [the Plaintiff's] concentration problems as minimal or negligible." *Id.* at 930. In the

instant case, the ALJ's RFC specifically addressed pace and speed by foreclosing the possibility of performing pace work and production rate work. (TR. 16.) It is also worth noting that no doctor has opined that Plaintiff has moderate or any specific limitations related to concentration, persistence and pace and one doctor opined, based on the record, that Plaintiff's limitations in this area were only mild. (Tr. 77-78, 94-95.) The facts distinguish these and other cases cited by Plaintiff.

Plaintiff does not argue that he has more than a moderate limitation in either social functioning or concentration, persistence or pace and there is no evidence of record that Plaintiff would have more than moderate limitations in these areas.  Nor is there evidence that Plaintiff's limitations would manifest in the failure to complete tasks in a timely manner or failure to complete them altogether. Nor did the ALJ determine that Plaintiff would "often" suffer a deficiency in concentration, persistent or pace. Noticeably absent in both Plaintiff's brief and the evidence of record in this case, are such restrictions as set forth in *Ealy*. As the ALJ correctly pointed out, Plaintiff reported that he can pay attention for a "long time", he can follow written and spoken instructions and finish what he starts. (Tr. 299.) The ALJ also properly considered Plaintiff's friend's report that Plaintiff has problems with paying attention, following directions and completing tasks. (Tr. 15, 307.)

At a psychiatric evaluation, Swarn Mahajan, M.D., reported that Plaintiff was of average intelligence with memory "grossly intact." (Tr. 426.) He was alert and oriented to time, place and person. (*Id.*) Other evidence of record supports the ALJ's findings, as well. Plaintiff has worked as a butcher just prior to the relevant time period under consideration. Although the work did not rise to the level of substantial gainful activity, the record suggests that the jobs ended due to physical limitations and not due to non-exertional or mental limitations. For example, at a

18

November 2011 cardiology exam, Plaintiff reported that he had started working as a butcher, but with the exertion required by the job he had chest discomfort and he was no longer working. (Tr. 408.) At an appointment in March 2012, Plaintiff complained of right shoulder pain. (Tr. 439.) He reported that he was unemployed, but was a butcher by occupation and had been lifting at work, using his left hand to cut meat, yet had pain in his right shoulder. (Tr. 439.)

For these reasons, I suggest that the ALJ's finding that Plaintiff has no more than moderate limitations in concentration, persistence or pace is supported by substantial evidence in the record. The ALJ provided specific limitations in the RFC to address them and her findings are supported by substantial evidence.

Similarly, the ALJ's RFC limitation to "work that involves only occasional interaction with the public and only occasional interaction with co-workers" sufficiently addresses Plaintiff's moderate limitations in social functioning and is supported by the evidence of record. Plaintiff's activities of daily living show that he is able to function around others when taking the bus and attending AA and NA meetings, although he may not like crowds. (Tr. 51.) He is able to go to the grocery store and enjoys playing chess with others, in his own home and the homes of others. (Tr. 48, 51-52.) He is able to attend group therapy with no noted problems and in his Initial Psychiatric Evaluation he was reported to be cooperative and made fair eye contact. (Tr. 421-24, 425-26.) Plaintiff reported that he has never lost a job due to problems getting along with other people. (Tr. 300.) The ALJ's findings with respect to Plaintiff's social functioning and the resultant RFC limitations are supported by substantial evidence.

### 3.     Whether the Finding That Plaintiff Can Perform A Limited Range of Sedentary Work Is Supported By Substantial Evidence

Finally, Plaintiff argues that the ALJ erred by finding that Plaintiff can perform sedentary work when the examining medical consultant Dr. Shaw concluded that Plaintiff "was limited to no more than 5 pounds . . . ." (Doc. 11 at 16.)

In discussing Dr. Shaw's opinion, the ALJ stated

> To the extent the consultative physician's opinion implies the claimant is limited to lifting 5 pounds, the opinion is given limited weight. The objective findings reveal the claimant has no musculoskeletal or neurological deficits that would limit lifting less than 10 pounds. Further, the claimant's statements regarding his daily activities indicate sufficient aerobic ability and cardiac stability to perform lifting at the sedentary exertional level.

Plaintiff argues that the reasons the ALJ gave for discounting Dr. Shaw's opinion in this one respect are flawed. First, Plaintiff takes issue with the ALJ's reasoning that Plaintiff has "no musculoskeletal or neurological deficits that would limit lifting . . . ." (Doc. 11 at 18.) Plaintiff points out that while he does not have such conditions and did not allege that he had, he does have other severe impairments that Dr. Shaw identified and relied upon in his opinion, that could reasonably cause such limitations. (Doc. 11 at 19.)

While the ALJ's discussion of Dr. Shaw's opinion may not be elegant, it is not inconsistent with the evidence. The ALJ's statement that Plaintiff has no musculoskeletal or neurological deficits that would limit lifting to less than 10 pounds is supported by the record and Plaintiff agrees with the substance of the statement. (Doc. 11 at 19.) The statement does not, as Plaintiff alleges, show that the ALJ fails to recognize that Plaintiff's heart conditions may cause such a limitation. In the very next sentence, the ALJ addresses Plaintiff's cardiac stability in the context of Plaintiff's activities of daily living. The ALJ goes on in the following paragraphs to note cardiac and respiratory examinations within normal limits. (Tr. 19.)

Dr. Shaw examined Plaintiff on September 7, 2011. (Tr. 385-91.) Plaintiff alleges that Dr. Shaw opined that he was limited to lifting "no more than 5 pounds." (Doc. 11 at 18.) Dr. Shaw's opinion read in context states, "Based on today's exam, the patient can work eight hours a day. The patient can sit, stand, walk for short distances, bend minimally and lift 5 pounds of weight without difficulty." (Tr. 387.) In fact, Dr. Shaw did not set forth a maximum limitation. Based on Dr. Shaw's opinion, one could reasonably expect that Plaintiff may have varying and increasing degrees of difficulty if sitting, standing, walking, bending and lifting increase beyond the limitations Dr. Shaw set forth. However, Dr. Shaw's opinion as written, taken in the context of Plaintiff's daily activities as set forth by the ALJ and Plaintiff's testimony regarding what he can lift is not inconsistent with the performance of sedentary work as defined in the Regulations or SCO. The ALJ properly explained the weight given Dr. Shaw's opinion and other evidence of record upon which he relied.

Plaintiff with his brief provided selected pages from the SCO, including Appendix C, Physical Demands. (Doc. 11-2.) The SCO defines sedentary work as work that "involves exerting up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body." (Doc. 11-2.) The Regulations define sedentary work as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). At the hearing, Plaintiff testified that the most he can lift is twenty pounds. (Tr. 55.) Upon further questioning from the ALJ he clarified that he if he lifts a gallon of milk with his left hand, he must use both hands to lift it. On this basis, I suggest that the ALJ's conclusion that Plaintiff may engage in the weight limitations consistent with a limited range of sedentary work is supported by substantial evidence.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The Sixth Circuit has held that hypothetical questions to experts are not required to include lists of claimant's medical impairments. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004).

### G.    Conclusion

For the reasons set forth above, the Commissioner's decision is not supported by substantial evidence. Defendant's Motion for Summary Judgment (Docket no. 14) should be DENIED. Plaintiff's Motion for Summary Judgment (Docket no. 11) should be GRANTED. The case should be REMANDED to the Commissioner for further proceedings consistent with this Report.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder

CHARLES E. BINDER

Dated: August 8, 2014                    United States Magistrate Judge